May it please the court, I'm Ron Zumbrun of the Zumbrun Law Firm in Sacramento representing Hillary Faulconer and Briarcliff Farm, the appellants and the plaintiffs in this action. Hillary and Don Faulconer purchased Briarcliff Farm in 1975. They purchased it from Hillary's parents who established the farm in 1959. In 1977 at a time when their farm was a model horse farm, 1997 when their farm was a model horse farm in Santa Cruz County and the surrounding area, the county provided a notice of violation to them and imposed over 50 red tags on their property, meaning 50 individual offenses. The red tags were hearing. What does it mean to record a red tag? What is the consequence of it? That's very important to this case. It's not in the record or the briefs. It may be important but it would be nice if somebody had told us. You have a red tag on your property, you no longer can sell your property, you no longer... As a matter of law? As a matter of fact, you can't and our record shows it. It's recorded where? It's recorded in the recorder's office on the deed? It's on the recorder's... It says up in the title report, right? Yeah. Anybody wants to buy your property, it would be reported. In this case, they went to the county to see what has happened. They saw 50 red tags. They won't purchase it. Meaning that the county, what people are being notified of is that the county thinks that there's a bunch of violations here that have to be remedied and that will cost money. And that, and therefore, the value of the property is less to the degree that the, of the cost of whatever remedies the county will ultimately require. Is that basically what we're talking about? Yeah, and it also means that you can't get other permits while you still have these outstanding permits. So you didn't do this in the brief, but as I was reading your briefing and the record, it seemed like there were two, to me, distinguishable issues. One was the NOV that was recorded on the property, which was recorded in 1998 and then again in 2000, I think, or 2002. Okay. And then there was a separate issue, I mean, they're obviously related, but your efforts to get the development permit from the county, which was the subject of long negotiations. But looking first just at the NOV, that seemed to be a final decision. The NOV itself says, and the regulations say, this isn't appealable once it's filed. So it's a final decision, and it seemed to me that the statute of limitations would have run absent one of the exceptions that you identify, like equitable estoppel or equitable No, Your Honor. The notice was you have 20 days to meet with your law and your enforcement staff. And what they didn't say was that if you don't meet, the decision is final. But then it was filed eventually after 20 days or 60 days or whatever it was. It was filed on the land title of the property. And at that point, you knew of it. It says it's not appealable. Why isn't that a final decision that the statute of limitations begins running unless an equitable tolling or equitable estoppel theory applies? It's just not the way it functions, Your Honor. The due process requires notice and a hearing. That was not a hearing. Okay. If that wasn't a hearing, that's not the question. The question, I mean, to tell you where I'm coming from, I think you have a pretty good argument that there should be a serious limitations problem. Why not? Because the statute of limitations runs from when the red tag was recorded. Right. And it goes on. Well, first of all Every year she can't get her money. She can't borrow. But that's not the question. The question is, if you're arguing for a pre-deprivation hearing, once the determination was final, I guess I'm putting it slightly differently than Judge Acuda did, once the determination was final, then you didn't have your pre-deprivation hearing and the time has to start running at that point. Well, there never was a hearing. That's right. And there wasn't a prompt. You're arguing, as I understand it, for a pre-deprivation hearing or a prompt post-deprivation hearing. Neither of those things happened. And they didn't happen in 1998. So why isn't this way, way late? It is filing of the notice of violation, the recording of that. Okay, fine. That starts her situation. Okay. And she is penalized for 13 years. Right, but the time that she didn't have the hearing. In other words, you're trying to separate out the procedural due process hearing issue from the issues, as Judge Acuda said, having to do with the development permit, which would be subject to Williamson County and all that. And I think you probably successfully do that. But for that very reason, that issue, which is the affirmative violation determination by the county, was over a long, long time ago. And the question of whether you should have had the hearing with regard to that was also over a long, long time ago. It was over a long, long time ago. They said you have to see us, meet with our prosecutors within 20 days. Right. And they didn't meet with them. Nothing told them that this is final. They got no notice. But it was eventually recorded. At that point, you lost your, you're asserting, as I understand it, that that was the deprivation of property. That when they put the recording on the property in the recorder's office, that's, you lost a huge amount of value at that point. And every day thereafter. But that doesn't matter. The point is that you wanted to have a hearing before that or promptly thereafter. You had neither. We requested one after. We never got it. We never had one before it. Also, let me add a few other things that goes along with the red tag. They will never remove a red tag until all red tags are removed. They will not remove a red tag that they know is not valid unless all are removed. We have in the evidence that the county, subsequent to the and the dates show that the horse operation was grandfathered. That doesn't count. She doesn't get that undone. It's there. She's totally tied in a knot for 13 years and can't get out from it. So you have, we understand you have a continuing violation theory. Yes. But let's move on to the development permit issue. My problem with that, and my question to you is under Williamson, I'm looking for the final decision by the county. And there's a series of negotiations. There was a settlement agreement. You almost reached agreement, then I guess there was a change. I guess you became the attorney. And then the settlement agreement goes away. So I didn't see any final decision by the county, which would make any claim on the development permit not right under the Williamson analysis. Well, the development agreement fell through. It didn't, it wasn't going to work out. They kept asking for changes and changes. But did they ever deny it? Did you ever get a denial of the permit? It was abandoned. Have you raised that issue in this Court? I'm clear that you have not. The questions presented relate only to the red tagging. Is that not true? And I thought you said affirmatively that the only issue that you're raising is procedural due process with regard to the red tagging. Yes. So nothing about the development permit is before us. Right. The trial court ruled against us on procedural due process and rightness. And that's the only issue you're raising. And it's that, and we feel that should be reversed. And you're not raising any procedural due process or anything with regard to the development permits, only the red tagging. Right. The development permit, it was abandoned. So your answer to Judge Akuta's question is we haven't raised any issue with regard to that question. I didn't hear you. You haven't raised any issue with regard to that question. No. It's not an issue. I don't think it was issued by them. I don't think that was issued by them, the county and the before them. So whether it was final or it wasn't final, it's not the case we have before us. The case we have before us deals only with the red tagging for alleged code violations, which is what your questions presented state. Right. And it involves you. You have to deal with, does she have a property right? And is it ripe? And it's a... Well, it's clearly ripe. The problem is it's overripe. That's the problem. It's plainly ripe as to whether she should have had a hearing before they finalized the red tags, because that's long ago. But because it's long ago, I don't see why it's not by the boards. Okay. We argue a continuing violation. Okay. We also argue that the county was enticing us toward settlement through this entire time. They gave us a stipulation that was unacceptable. She had to waive rights that she knew that she had. Her horse farm was grandfathered, and it ignored that. They had other things. And then also in 2006, when we realized this is going no place, we filed suit. There was no... So there's an unstoppable presence. Even more finally, you're not challenging the ultimate determination of what was going to be the remedies on the violations. Your questions presented all have to do with the red tagging and the recording and nothing thereafter. Okay. We were arguing that she was denied her due process rights. She did not have a hearing. This Court should order the red tags expunged. They're null and void. And if there's anything going to go further, it has to be a full evidentiary hearing with due process in both predetermination and post-determination. And so she should have a clear slate as a county wants to start over. That's her business. But she should have the rights to her property, the rights to sell, the rights to finance, and the rights to get other permits. And this case has gone on this basis. The others – I don't think the other side has argued what the Court is arguing. I think we've been all arguing the due process and Judge Wehr ruled that this wasn't ripe and ruled without prejudice. I understand you ruled it wasn't ripe. All right. Your time is up.  Thank you. Okay. Good morning, Your Honors. May it please the Court. Jason Heath for the defendants and appellees. I think the case has been briefed thoroughly. We do disagree on the issues. I like my statute of limitations argument better than my ripeness argument. But I think the ripeness argument is valid. Well, I don't understand that, but if you don't want to argue it, it's fine with me. If you have any questions of me, I'd be happy to answer them. Did you make a statute of limitations argument in your brief? I did make a statute of limitations argument in my brief, Your Honor. Clearly, the argument with regard to a pre-deprivation hearing has to be void – has to be limited. When did the time start to run on the argument that there had to – if there wasn't a pre-deprivation hearing, there had to be a post-deprivation hearing? Well, I think immediately after, 1998, is when it ran. They had 60 days to get done. They had actually about six or seven months before it was recorded. That's right. That's right. But it started with the recording, and because that's the deprivation, according to them, is the recording. So once you have the recording – You have to have a prompt post-deprivation hearing. Prompt meaning, you know, I don't know if there's – I think it's fact-specific. But it's not going to last eight years. And that's the problem with this case. When was the case actually filed? 2006. Okay. But their argument is that the county prevented them or dissuaded them from bringing an action because of the illusory view that they could get rid of the NOV through the development permit. And I understand that as their argument. However, there's no evidence in the record to support that argument. That's consistently been their argument. And I've looked for evidence, and the record that I have doesn't have any in there to indicate that. There – what is the procedure? After there's a recording, that's it? You have to go for a mandamus in the Superior Court? Yes. That's the – But there is some discussion in the record of having some kind of a hearing on the violations. Well, here, let me explain that to you. There's two different enforcement mechanisms that the county has. The first is in the 19.01 series. And in the 19.01 series, that concerns NOVs. And it concerns the posting of an NOV and the recording of an NOV. What does an NOV stand for? Notice of violation, which is a red tag. There aren't 52 separate red tags. There's one red tag that documents 52 separate violations on the property. Separately, there's a different enforcement mechanism under Title I of the Code, which allows the county to have an administrative hearing at which the county goes before an administrative law judge and says, Judge, we want to have administrative fines and penalties assessed against these folks because they're not cleaning up the actual – they're not cleaning up their problems. And that never happened. That never happened. But there were also never assessed fines and penalties for that reason. There were also never assessed fines and penalties. And my reading of the record is just that it just kept getting continued and continued and continued, partially because the Falconers wanted to continue and continue and continued it. But that hearing wouldn't have gone back to the question of whether there were violations. It would have only dealt with the remedies for the violations. Well, it would have dealt with the remedies for the violations. But in determining whether there were remedies for violations, the administrative law judge, if the administrative law judge determines that no, county, you're wrong, there aren't any problems here, then they're not going to award us fines and remuneration. Well, then what would have happened to the NOV, though? In other words, if either they had – the Falconers had cured the violations that were identified in the recorded NOV, or if the ALJ had held no, county, you were wrong in identifying these as violations. How would that affect the NOV? Well, then we would expunge it. If we went before the administrative law judge to get administrative fines and penalties against a property owner, and the administrative law judge disagreed with us that there were violations, then we would expunge that. That would be it. So there is another route for getting rid of the NOV. It isn't just mandamus. It would be through the process of either correcting the violations or in establishing that they weren't valid. Yes, but the one distinction is that the property owner doesn't have the opportunity to request an administrative hearing under Part 1 of the code. Only the county does. The county does. And so the property owner's remedy is to meet with the staff within 20 days. That is some kind of hearing. And I don't want to get into the merits on whether or not that's a realistic or a good thing. They have 20 days to meet and tell us, no, here's my building permits. And they actually had 60 days. And they actually had 60 days. And beyond that, they actually had 7 months because we did not record the red tag while their land use consultant was telling us, hey, we're here, we're fixing the problems, we're trying to work on it, we're trying to work on it, we're trying to work on it. Trying to work on it never developed into anything, so we finally recorded the red tags. And then they went on and submitted a couple of development applications. They submitted one development application. It went further for a little while. Then it wasn't in a state where we could give it to the planning commission or the planners because we needed more information. We say we need more information. We don't get the information. So then we say your application is abandoned. They say, no, wait, we want to come back. We say, okay, come back. We'll give you a chance to come back. We ask them again, give us the information. They don't give us the information. So eventually we say in 2002, we're officially abandoning this application. They didn't appeal that. Nothing happens of substance between 2002 and 2006 when they finally file this lawsuit. They've been represented by counsel since 2000. They've been represented by Mr. Zembrin since 2001. And what is your position as to what the limitations period is, two years under 1983? Well, I can't remember. It doesn't make a difference for purposes of this case. It's academic because it's much longer than two years. But it literally could be one year because the statute of limitations at the time of this event was one year. But suppose we thought 2002 was the relevant date. It would still be late. It would still be late. It would still be, yeah. If 2002 was the relevant time, it would still be late, and it would still be two years, past two years. Okay. Anything else? No, thank you. Thank you very much. Mr. Zembrin. I believe counsel clarified what the 20-day requirement was. And when you get a notice of violation, you have 20 days on the notice to meet with county staff. Then if you don't, they will proceed, they say, to consider recording the notice of violation, which they did. There's nothing final about the 20 days. It leads to the notice of violation, which then gets into what I'm arguing, is that it can be a continuing violation. The county argues, and the county policy ---- See, this is the question. Let's assume something is a continuing violation. What isn't a continuing violation, or at least I'd like to hear you say why it is, is having a pre-deprivation hearing or a post-deprivation hearing, because those two things are time-bound and they're over. Well, that's a denial of due process. It may be, but it's one that occurred a long time ago. When did it happen? You have to say, you know, when has your time begun? When the time begins, if you were ---- if government was going to, every year, whip you once, and you're now into the 13th year, can they do it forever? And this is that type of thing. The other thing is the county takes a position as a matter of policy that no due process hearings are required. Council argued that to the trial court. I think they may have a big problem, but I don't know that this is the case in which we're going to resolve it. And the ---- I think there's both a continuing and there's an estoppel here, and we haven't had an evidentiary hearing to deal with that. But we have a ---- you can't ---- the stipulation, they're talking about late in the process, you had to stipulate that all your horse facilities or most of them lack permits, where they knew in 1982 that all of this was ---- no permits were required. Okay. You're over your time. Thank you very much, both of you. And thank you for your arguments. The case of Falconer v. County of Santa Cruz is submitted. We will go on to ---- actually, I think we'll take a very short break, and then we'll come back. Thank you. Thank you.
judges: Goodwin, Berzon, Ikuta